UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOR INDUSTRIES, INC., AND DUTCHMEN MANUFACTURING, INC., | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 3:07 CV 465 |
| MARK SCHWARTZHOFF, | )<br>)<br>) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before this court on the motion for summary judgment filed by plaintiffs Thor Industries, Inc., and Dutchmen Manufacturing, Inc. (DE # 21.) Defendant Mark Schwartzhoff has responded (DE # 32), and plaintiffs have replied (DE # 34). The court will grant summary judgment in favor of plaintiffs, as explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a former high level employee of plaintiffs.[1] (DE # 22 at 2.) Plaintiffs allege that while working for Dutchmen as Vice President of Finance defendant deliberately overstated the amount of income that company earned by creating and submitting false accounting entries. (*Id.* at 2-3.) Defendant did so repeatedly, over four fiscal years, resulting in Dutchmen overstating its income by more than twenty five million dollars in total. (*Id.* at 3.) This fraudulent overstatement led to several

---

[1] One plaintiff, Dutchmen Manufacturing, Inc., (Dutchmen) is a subsidiary of the other, Thor Industries, Inc. (Thor). (DE # 22 at 2.)

employees, including defendant, receiving erroneously large performance bonuses. (*Id.* at 3-5.) Further, once plaintiffs discovered the errors, they launched a full on and very expensive investigation and audit of Dutchmen to determine the extent of the errors, and had to amend Thor's public filings. (*Id.* at 5.) In addition, defendant admitted his deception to plaintiffs shortly before he stopped working at Dutchmen. (DE # 22-2 at 3.) Defendant does not contest any of the material facts alleged by plaintiffs.

Plaintiff's motion for summary judgment (DE # 21) and its supporting memorandum and exhibits (DE # 22), reiterate these facts, request judgment on a host of torts and statutory causes of action, and demand treble and punitive damages (*Id.*).

Defendant has responded tersely, essentially surrendering. (*See* DE # 32.) In his two-page response, he states that he "does not oppose" the motion, and "does not wish to continue litigating the plaintiffs' claims." (*Id.* at 1.) He does object to certain expenses that plaintiffs' claim as damages (*id.*), but he submits no evidence in support of these objections. The response, although drafted by counsel, also indicates that plaintiff has consented to the withdrawal of his counsel and will be representing himself *pro se* from hereon. (*Id.*) In reply, plaintiffs reiterate their summary judgment arguments, and note that defendant has failed to support his objections to their various damages requests. (DE # 34.)

## II. BANKRUPTCY STAY

Before delving into the summary judgment issues, this court must address an unusual procedural matter. In April of this year, defendant declared bankruptcy. (DE #

2

25-2 at 1.) According to the parties, his bankruptcy case is currently pending in the United States Bankruptcy Court for the Western District of Missouri. (*See* DE # 23.) Normally this would stay the proceeding of this case, as it has for some time now. (*See* DE # 24.) However, the bankruptcy court has ordered that this court may release the stay (DE # 25-2 at 7), presumably so this court can issue a judgment in this matter, and thus allow the bankruptcy court to fully address all of defendant's financial issues. This court is happy to oblige. The stay in this case will be lifted.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. PROC. 56(c)).

Once the moving party has met its burden, the nonmovant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F. 3d 672, 677 (7th

Cir. 2008). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F. 3d 1099, 1104 (7th Cir. 2008). Furthermore, when considering a motion for summary judgment, the court views the record and all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F. 3d 726, 731 (7th Cir. 1999).

## IV. ANALYSIS OF PLAINTIFFS' CLAIMS

Plaintiffs bring several different claims against defendant. To begin, plaintiffs allege that defendant has violated various Indiana criminal statutes. (DE # 22 at 7-12.) Specifically, plaintiffs claim that defendant violated INDIANA CODE §§ 35-43-4-2(a) (Theft), 35-43-4-2(b) (Receiving Stolen Property), 35-43-4-3 (Conversion), and 35-43-1-2 (Criminal Mischief). (DE # 22 at 7-11.) As plaintiffs explain, Indiana allows victims injured by these crimes to bring suit against the perpetrator (*Id.* at 11 (citing IND. CODE § 34-24-3-1)); and "[r]ecovery on this theory in a civil action does not require a criminal conviction." *Manzon v. Stant Corp.*, 138 F. Supp. 2d 1110, 1114 (S.D. Ind. 2001) (citing *Huff v. Biomet, Inc.*, 654 N.E. 2d 830, 835 (Ind. Ct. App. 1995)). Plaintiffs also allege that defendant committed constructive fraud by breaching his fiduciary duty to Dutchmen, in addition to committing the tort of common law fraud. (DE # 22 at 12-16.) Finally, they argue that they are entitled, via *quantum meruit*, to the return of the undeserved

4

bonuses they paid to defendant. (*Id.* at 15-16.) The court will address each of these claims in turn.

   A. *Theft*

Plaintiffs first allege that defendant violated INDIANA CODE § 35-43-4-2(a) and committed theft. That statute explains that— a person "who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." Indiana law explains that a person's control over the property of another is "unauthorized" if it is exerted "by creating or confirming a false impression in the other person." IND. CODE § 35-43-4-1(b)(4).

   Here, plaintiffs have demonstrated that defendant's actions meet these elements. First, he acted intentionally in creating false accounting records, which led to him receiving erroneously the "property" of Dutchmen, specifically their money in the form of overly large bonuses. (*See* DE # 22-4 at 4.) His "control" or acquisition of these bonuses was "unauthorized" under Indiana law because it came as the result of the false impression he created in Dutchmen and Thor by submitting the inflated accounting records. (*Id.* at 4-5.) Furthermore, by failing to repay or refuse these bonuses, defendant demonstrated that he intended to keep them, thus "depriving" plaintiffs of the use of their funds. Defendant has admitted he intentionally created the false accounting records, did not correct them or notify plaintiffs that they were wrong, and received erroneously large bonuses as a result to which he never objected to or

5

returned. (*Id.*; DE # 22-3 at 3.) Therefore, the court finds that there is no genuine issue of material fact and plaintiffs are entitled to summary judgment on their claim of theft.

     *B. Receipt of Stolen Property*

Second, plaintiffs claim that defendant violated INDIANA CODE § 35-43-4-2(b), thereby committing the criminal offense of receipt of stolen property. (DE # 22 at 9-10.) A person commits this offense if he or she "knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft." IND. CODE § 35-43-4-2(b) Here, plaintiffs have provided evidence that defendant intentionally received erroneously large bonuses– money that was plaintiffs' property– due to his false accounting entries. (DE # 22-3 at 2-4.) Furthermore, this court has already determined that plaintiffs are entitled to summary judgment on their claim of theft, and defendant has presented no evidence to contradict these claims. Therefore, plaintiffs have shown that there is no genuine issue of material fact regarding their claim of receipt of stolen property, and thus merit summary judgment on this claim.

     *C. Conversion*

Third, plaintiffs assert that defendant has committed conversion under Indiana law. (DE # 22 at 10-11.) However, since this claim is a lesser included offense of theft, as plaintiffs tacitly acknowledge (DE # 22 at 10), and because the court has already held that plaintiffs merit summary judgment on their theft claim, the court will not address their conversion claim.

*D. Criminal Mischief*

Fourth, plaintiffs charge that defendant is liable under Indiana's criminal mischief statute. (DE # 22 at 11.) That statute explains that a "person who knowingly or intentionally causes another person to suffer pecuniary loss by deception" commits criminal mischief. INDIANA CODE § 35-43-1-2. Given the unrebutted evidence provided by plaintiffs showing that defendant faked accounting entries and received increased bonuses as a result (*see* DE # 22-3; DE # 22-4), the court holds plaintiffs have established that there is no genuine issue of material fact regarding this claim. Plaintiffs are also entitled to summary judgment here.

*E. Constructive Fraud*

Plaintiffs' fifth claim alleges that defendant committed constructive fraud by breaching the fiduciary duty he owed to Dutchmen as one of its officers. (DE # 22 at 12-14.) In Indiana, a party alleging constructive fraud must show:

> 1. A duty existing by virtue of the relationship between the parties;
>
> 2. A violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;
>
> 3. Reliance thereon by the complaining party;
>
> 4. Injury to the complaining party as a proximate result of the reliance; and
>
> 5. The gaining of an advantage by the party to be charged at the expense of the complaining party.

7

*Allison v. Union Hosp., Inc.*, 883 N.E. 2d 113, 123 (Ind. Ct. App. 2008) (citing *Marathon Oil Co. v. Collins*, 744 N.E. 2d 474, 480 (Ind. Ct. App. 2001)).

In this case, defendant admits he was an officer at Dutchmen. (DE # 22-2 at 2). Therefore, under Indiana law, defendant owed plaintiffs a fiduciary duty. *See Geiger & Peters, Inc. v. Berghoff*, 854 N.E.2d 842, 849 (Ind. Ct. App. 2006) ("As an officer, Berghoff certainly owed a fiduciary duty to FSC."). This satisfies the first element.

This fiduciary duty required him to "deal fairly, honestly, and openly with his corporation" and to not be "distracted from the performance of his official duties by personal interests." *G & N Aircraft, Inc. v. Boehm*, 743 N.E. 2d 227, 240 (Ind. 2001). Obviously, by repeatedly submitting fake accounting reports that intentionally and grossly overstated Dutchmen's income, defendant made material misrepresentations of fact and violated his fiduciary duties. Furthermore, plaintiffs have submitted uncontested evidence showing that they relied upon defendant's misrepresentations in the filing of their taxes and awarding of bonuses, were injured by paying out these excessive, undeserved bonuses, and that defendant gained as a result. (DE # 22-3; DE # 22-4.) Again, defendant has failed to provide any evidence rebutting the affidavits and discovery materials provided by plaintiffs that demonstrate these allegations. Since there is no issue of material fact, the court has no choice but to conclude that plaintiffs are entitled to summary judgment on their claim of constructive fraud.

*F. Common Law Fraud*

Plaintiffs next allege that defendant committed common law fraud. (DE # 22 at 14-15.)

> The essential elements of common law fraud are: 1) a material representation of past or existing facts which 2) was false 3) was made with knowledge or reckless ignorance of its falsity 4) was made with intent to deceive 5) was rightfully relied upon by the complaining party and 6) proximately caused injury to the complaining party.

*American Heritage Banco, Inc. v. McNaughton*, 879 N.E. 2d 1110, 1115 (Ind. Ct. App. 2008) (citing *Bilimoria Computer Sys., LLC v. America Online, Inc.*, 829 N.E. 2d 150, 155 (Ind. Ct. App. 2005). Again, the facts shown by plaintiffs' evidence, and unrebutted by defendant, satisfy each of these elements. Defendant materially represented a fact to plaintiffs— that Dutchmen had more income than it really did— which was false, and which defendant knew to be false. (DE # 22-3.) Furthermore, this court finds that defendant demonstrated his intent to deceive by repeatedly and purposefully overstating Dutchmen's income for a period of several years. (*Id.* at 1-2.) Finally, it is uncontested that Dutchmen relied upon the false accounting entries and was injured by paying undeserved bonuses to its employees and having to conduct an expensive investigation of its own finances and accounting procedures. (*Id.* at 2-4.) Thus, the court holds that plaintiffs have provided evidence that fulfills the elements of common law fraud. As defendant does not contest this evidence, there is no genuine issue of material fact, and plaintiffs are entitled to summary judgment on this claim.

*G. Quantum Meruit*

Plaintiffs last allege that they are entitled to recoup defendant's excessive bonuses according to the doctrine of *quantum meruit*. (DE # 22 at 15-16.) This doctrine allows a plaintiff to recoup a "measurable benefit" that was conferred upon the defendant "under such circumstances that the defendant's retention of the benefit would be unjust." *King v. Terry*, 805 N.E. 2d 397, 400 (Ind. Ct. App. 2004) (citing cases). Given the uncontested facts, this doctrine definitely applies to this case, though only in regard to the difference between the bonuses that defendant received from plaintiffs after fraudulently inflating Dutchmen's income, and the lesser bonuses he would have received had he been honest. According to uncontested evidence provided by plaintiffs, the difference between the wrongly inflated bonuses and the normal bonuses is $299,805. (DE # 22-3 at 3.) Thus, plaintiffs are entitled to recoup this sum from defendant via *quantum meruit*.

**IV. DAMAGES**

Plaintiffs are not shy about asking for extensive damages, requesting both treble and punitive damages from defendant. (DE # 22.) In support of their damages claims, plaintiffs have filed an affidavit by one of their executives describing the expenses they incurred (DE # 22-3), and a report by a certified public accountant detailing the damages they claim after taking into account various tax liabilities. (DE # 22-5.)

In his response, defendant does not contest plaintiffs' claims for punitive and treble damages. Instead he "objects" to plaintiffs' requests to recover the excess amount

of bonuses they paid other executives based on his faked accounting reports, and the amounts paid to an accounting firm to audit Dutchmen. (DE # 32 at 1.) Plaintiffs' reply notes that defendant has provided no legal or factual basis to support his "objections." (DE # 34 at 4-5.)

*A. Defendant's Objections*

In addressing the dispute over the excessive bonuses paid to other executives and the accounting costs, the court sides with plaintiffs. Defendant has made no legal arguments, provided no legal authority, and submitted no factual evidence in support of his objections. (*See* DE # 32.) And his own admissions belie his objections. Specifically, defendant acknowledged "he was aware" that fraudulently inflating Dutchmen's income "might" lead to increased bonuses to "him and others." (DE # 22-4 at 4.) So essentially, defendant has admitted that his actions were the proximate cause of the overpayments to other executives. Although he did hint that other executives were involved in or negligently ignored his scheme (*id.*), he has submitted no further evidence to demonstrate this.

Regarding the accounting costs, plaintiffs have explained that these costs were incurred as part of their efforts to determine how badly defendant had overstated their income. (DE # 22-3 at 3-4.) Simply for tax purposes, the need to undertake such an evaluation is obvious. The need is further heightened by the fact that Thor, Dutchmen's parent, is a publicly traded company, and legally obligated to provide accurate public filings about its financial status. (*Id.*) That such an investigation would be required, after

11

defendant purposefully overstated Dutchmen's income for four fiscal years, is a given; thus, the expense of this investigation was definitively caused by defendant's actions. In sum, defendant's objections regarding damages (DE # 32) are overruled.

*B. Plaintiffs' Actual Damages*

In their various filings and evidentiary submissions, plaintiffs claim the following actual damages:

- $4,854,968.00 for professional fees for the investigation and auditing of Dutchmen;[2]

- $1,969,035.00 for overpayment of bonuses to defendant and other executives

- $397,759.00 for lost interest due to overpayment of income taxes.

(DE # 22-5 at 1-2.) Combined, plaintiffs allege they have suffered $7,393,126.00 in total damages. (*Id.* at 2-3.) And again, plaintiff does not challenge this assertion beyond his unsupported and unexplained "objections" and does not offer any competing evidence to contradict plaintiffs' calculations. Therefore, the court finds that plaintiffs are entitled to compensatory damages of $7,393,126.00.

*C. Treble Damages*

Regarding their requests for treble damages, plaintiffs rely on INDIANA CODE § 34-24-3-1. As explained earlier, this statute empowers the victim of a crime that violated some particular Indiana criminal statutes to bring a civil action against the perpetrator, without waiting for a criminal charge or conviction. *See* IND. CODE § 34-24-3-1. Further,

---

[2] All figures started out larger, but were reduced after the accountant employed by plaintiffs analyzed the applicable "federal and tax savings" resulting from the various expenditures. (*See* DE # 22-5 at 2-3; DE #22-3 at 2-3.)

the statute allows a successful litigant to receive "[a]n amount not to exceed three (3) times the actual damages of the person suffering the loss" as an award. *Id.* at (1). Plaintiffs' statutory causes of action for theft, receiving stolen property, and criminal mischief fall under this statute. *See id.* Therefore, since plaintiffs have been granted summary judgment on all three of these claims, they are eligible to receive an award of treble damages on each.

Plaintiffs have repeatedly requested treble damages in their filings (DE # 22 at 11-12, 16-17 ("Plaintiff is entitled to treble such damages")), and defendant has failed to argue against their imposition. Notably, however, plaintiffs have failed to explain *why* this case entitles them to the windfall of treble damages.

Under Indiana law the decision to award treble damages lies in the discretion of the court. *See Citizens Nat. Bank of Evansville v. Johnson*, 637 N.E. 2d 191, 195 (Ind. Ct. App. 1994); *Ballard v. Harman*, 737 N.E. 2d 411, 418 n.5 (Ind. Ct. App. 2000) ("there is no absolute entitlement to an award of treble damages"). Supporting such an award, defendant did repeatedly inflate Dutchmen's earnings, over a four year period, and he and his fellow executives reaped increased bonuses as a result. Whether he did so only to increase his bonuses, or also to increase the bonuses of his colleagues, or possibly because he thought it would benefit Thor and its stock price, is uncertain. What is clear is that these frauds were conducted over several years, cost Dutchmen and Thor millions of dollars, and represented a gross betrayal of his duty to them.

Cutting against such a request is the fact that plaintiff only personally gained $299,805 from his malfeasance. (DE # 22 at 12.) Certainly, as plaintiffs have explained in detail, the ramifications of his actions cost them dearly— mandating a full on investigation and audit, and requiring Thor to amend its public filings. But penalizing defendant to the tune of $22,000,000, as plaintiffs demand (see *id.*), seems dramatically disproportionate to his gains. In addition, it is undisputed that as soon as plaintiffs discovered defendant's overstatement of Dutchmen's earnings, defendant admitted what he had done. (DE # 22-2 at 3.) And he has essentially waved the white flag in this lawsuit, admitting his fraudulent actions and liability. (DE # 32.)

Furthermore, it is unclear to this court what responsibility other employees of Thor and Dutchmen had in overseeing defendant. The idea that for four straight years, an executive at a subsidiary of a large publicly traded corporation would be able to dramatically inflate the subsidiary's income, and no one else at the subsidiary or at the parent company would be aware of it, is bizarre. This is either a case of extremely poor oversight, or one where other employees either condoned or were complicitous in defendant's actions. Either way, while defendant did act fraudulently, other employees were certainly also at fault. (*See* DE # 22-4 at 3-4 (¶ 9 and Response).) In addition, as the parties have acknowledged (DE # 23; DE # 25), defendant has declared bankruptcy, calling into serious doubt his ability to pay any amount of this judgment, let alone $22,000,000. Taking all these factors into consideration, the court holds that plaintiffs do not merit the windfall that treble damages would provide. *See White v. Indiana Realty*

*Associates II*, 555 N.E. 2d 454, 458 (Ind. 1990) ("it is highly appropriate for the trial court to weigh any equities before deciding the amount" of potential treble damages).

Nonetheless, given the extensive bad acts at issue, and defendant's repeated betrayal of his fiduciary duties, the court believes that some exemplary damages under INDIANA CODE § 34-24-3-1 are appropriate. IND. CODE § 34-24-3-1(1) (parties may claim an "amount *not to exceed* three (3) times the actual damages") (emphasis added). The court will therefore impose additional damages under § 34-24-3-1(1) for plaintiff's claims of theft, receipt of stolen property, and criminal mischief. The additional damages shall be $2,606,874.00, added to the actual damages of $7,393,126.00, resulting in an award of $10,000,000.00 for the three aforementioned causes of action.

*D. Punitive Damages*

In regard to plaintiffs' request for punitive damages, in their initial summary judgment brief they make repeated requests for a hearing on the matter. (DE # 22 at 14-17.) Then, in their reply brief, they state that they will stop seeking such damages if treble damages are imposed. (DE # 34 at 5.) As explained above, this court will award some exemplary damages available under INDIANA CODE § 34-24-3-1, but not the full treble damages. Thus, it is necessary to address plaintiffs' request for punitive damages and a hearing on the issue.

To begin, this court questions plaintiffs' ability to rely on INDIANA CODE § 34-24-3-1 and also receive punitive damages. This is because INDIANA CODE § 34-24-3-3 appears to explicitly prohibit a party from recovering both the exemplary damages

15

provided by § 34-24-3-1 and punitive damages. *See* IND. CODE § 34-24-3-3. This statute reads:

> It is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action. However, a person may not recover both:
> (1) punitive damages; and
> (2) the amounts provided for under section 1 or 1.5 of this chapter.

*Id.* Thus, the court reads this statute as prohibiting a plaintiff from seeking exemplary (including treble damages and attorney's fees) via § 34-24-3-1 *and* also demanding punitive damages, which is what plaintiffs have attempted to do in this case. Further reading of Indiana case law applying this provision indicates that the court's understanding is correct. *See Osborne v. Wenger*, 572 N.E. 2d 1343, 1346 (Ind. Ct. App. 1991) ("The legislature has unambiguously indicated that a litigant may not recover both treble damages and punitive damages."). As plaintiffs have explicitly sought and received exemplary damages under § 34-24-3-1, the court holds that § 34-24-3-3 bars them from also receiving punitive damages.

In addition, even if this court could entertain plaintiffs' demands for punitive damages, it does not believe that they are merited in this case. In Indiana, there is no right or entitlement to punitive damages. *Cheatham v. Pohle*, 789 N.E. 2d 467, 472 (Ind. 2003). Furthermore, the awarding of punitive damages is a question of fact, one where the plaintiffs must prove their entitlement by clear and convincing evidence, and one where the financial condition of the defendant is relevant. *Id.* Indeed, "the trier of fact is not required to award punitive damages even if the facts that might justify an award

16

are found." *Id.* Here, were the court to consider the question, it would find punitive damages to be inappropriate. Defendant committed extensive malfeasance by repeatedly overstating Dutchmen's earnings and reaping nearly $300,000 dollars in extra bonuses as a result. But defendant admitted his wrongdoing when caught (DE # 22-2 at 3), has not resisted this lawsuit (DE # 32), and has been found liable for more than $7,000,000 in actual damages. Given his proportionally small personal gain, the amount of actual damages is punitive enough. Further, defendant has declared bankruptcy (DE # 23), and the court assumes he will be unable to pay the majority of the actual damages, let alone some large award of punitive damages.

Finally, the court does not believe conducting a hearing would change any of these facts. Rather, it would simply delay the bankruptcy court's resolution of defendant's case and drive up defendant's debts and plaintiffs' legal bills. Therefore, plaintiffs' request for punitive damages and a hearing on the issue are denied.

*E. Prejudgment Interest*

Although the parties failed to address the issue of prejudgment interest, the court will do so now to avoid future confusion. In Indiana, parties may only receive prejudgment interest in cases where "the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation," meaning where only "a simple mathematical calculation is required" to assess damages. *Bopp v. Brames*, 713 N.E. 2d 866, 872 (Ind. Ct. App. 1999). Furthermore, prejudgment interest is generally not allowable in cases where punitive or exemplary damages are awarded. *See New*

17

*York, C. & St. L. Ry. Co. v. Roper*, 96 N.E. 468, 473 (Ind. 1911) (prejudgment interest not allowed when punitive damages awarded); *but see Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E. 2d 792, 800 (Ind. Ct. App. 1986) (prejudgment interest on exemplary damages permissible where such interest is "an element of the actual damages in this case" and where "the statute mandates trebling actual damages").

In this case, had plaintiffs only requested the amount of actual damages, prejudgment interest likely would have been appropriate as determining the damages and interest would have only required "a simple mathematical calculation." *See Thor Electric, Inc., v. Oberle & Assoc., Inc.*, 741 N.E. 2d 373, 377 (Ind. Ct. App. 2000). Instead, "more than mere mathematical calculation was necessary" because the plaintiffs asked for a discretionary award of damages. *See Harlan Bakeries, Inc. v. Muncy*, 835 N.E. 2d 1018, 1038 (Ind. Ct. App. 2005). Thus, a case like this one, where discretionary damages are awarded, is "not the type of situation wherein prejudgment interest is proper." *Id.* (denying request for prejudgment interest in case where court awarded exemplary damages under INDIANA CODE § 34-34-3-1). Therefore, the court will deny plaintiff's request for prejudgment interest.

## V. CONCLUSION

Plaintiffs are granted summary judgment in their favor and against defendant on their claims for theft, receipt of stolen property, criminal mischief, constructive fraud, common law fraud, and *quantum meruit*. Plaintiffs' request for summary judgment on their conversion claim is denied as moot.

Regarding damages, the court awards plaintiffs damages in the total amount of $10,000,000.00. As explained above, this $10,000,000.00 award includes special damages assessed via INDIANA CODE § 34-34-3-1(1), which is applicable to this case only due to plaintiffs' successful claims for theft via INDIANA CODE § 35-43-4-2(a), receipt of stolen property via INDIANA CODE § 35-43-4-2(b), and criminal mischief via INDIANA CODE § 35-43-1-2(a)(2). For the claims of constructive and common law fraud, plaintiffs have damages of $7,393,126.00, with this amount already included in the $10,000,000.00 total damages award. On the claim of *quantum meruit*, plaintiffs have damages of $299,805.00, with this amount, again, already included in the $10,000,000.00 total damages award.

For the foregoing reasons, the stay in this case (DE # 24) is **VACATED**. Plaintiffs' motion for summary judgment (DE # 21) is hereby **GRANTED**. The court **CANCELS** all settings herein. Plaintiffs are awarded damages of $10,000,000.00, post-judgment interest, and any award of attorney's fees and costs to be established by affidavit. The Clerk is to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of plaintiffs Thor Industries, Inc., and Dutchmen Manufacturing, Inc., and against defendant Mark Schwartzhoff in the amount of $10,000,000.00 plus post-judgment interest at the statutory rate, attorney's fees and costs.

                              **SO ORDERED.**

**DATED:** October 24, 2008

                              s/James T. Moody  
                              JUDGE JAMES T. MOODY  
                              UNITED STATES DISTRICT COURT